IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| HENRY WINKLEY, #121214 | * | |
| Plaintiff | | |
| v. | * | CIVIL ACTION NO. JFM-05-1537 |
| WARDEN, et al. | * | |
| Defendants. | | |
| | *** | |

**MEMORANDUM**

Plaintiff originally filed this civil rights complaint and several amendments attacking various aspects of his confinement at the Baltimore City Detention Center ("BCDC"). The general and repetitive claims go to alleged: (i) limitations on plaintiff's religious worship; (ii) cell overcrowding and ventilation; (iii) inadequate medical, mental health, employment, and social services; and (iv) restrictions on plaintiff's access to the law library.[1]  Paper Nos. 1, 4-5, 8-14, 18, & 20.  Plaintiff originally sought a federal grand jury investigation and the federal "take over" of BCDC.[2]  Paper No. 1.  In a supplemental complaint, however, he additionally seeks compensatory and punitive damages.  Paper No. 9.

On December 12 and 29, 2005, defendant[3] filed motions to dismiss or, in the alternative, motions for summary judgment, which have been treated as motions for summary judgment.  Paper Nos. 35 & 36. The motions remain unopposed and the case is ready for consideration.  Oral hearing is not required.  *See* Local Rule 105.6.  (D. Md. 2004).

---

[1] The general premise of plaintiff's complaint is that although he was housed at BCDC as a pre-trial detainee, he was treated as a convict.

[2] In September of 2005, plaintiff was transferred out of BCDC. Paper No. 23.  Consequently, his request for injunctive relief shall be denied as moot.

[3] The Warden of BCDC is the only named defendant.

The doctrine of respondeat superior does not apply in § 1983 actions. *See Monell v. New York Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978). Plaintiff must therefore prove that Warden Filbert was personally involved in the alleged deprivations or that: (i) he had actual or constructive knowledge that his staff was engaged in unconstitutional conduct; (ii) he tacitly authorized the conduct; and (iii) there was an affirmative causal link between the Warden's inaction and the injury suffered by plaintiff. *See Shaw v. Stroud*, 13 F.3d 191, 799 (4th Cir. 1994); *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

Defendant Filbert, Warden of BCDC, avers that he has no personal knowledge of plaintiff or of his recent incarceration at BCDC. He maintains that as there is no respondeat superior liability under 42 U.S.C. § 1983, he can only be held liable for his supervisory actions and plaintiff has failed to sufficiently assert such liability. Plaintiff does not refute this argument. The court finds that plaintiff's conclusory claims fail to show, much less allege, that Warden Filbert is liable in his personal or supervisory capacity.

The court's analysis, however, does not end here. Even were the court to examine the substantive merits of plaintiff's claims, it would find no deprivation under the Civil Rights Act, 42 U.S.C. § 1983. Each allegation shall be examined seriatim.

### Religious Practices

Plaintiff alleges that he was neither permitted to wear a religious headpiece nor provided Jumah prayer services. The Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1 (a),[4] provides that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of

---

[4] In *Cutter v. Wilkinson*, 124 S.Ct. 2113, 2121-22 (2005), the Supreme Court found that the section of the RLUIPA which increased the level of protection for prisoners' religious rights did not violate the Establishment Clause of the First Amendment.

this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person is in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest."

Warden Filbert affirms that every Friday BCDC provides Jumah prayer service, which is presided over by its long-term Islamic Coordinator.  Further, Warden Filbert affirms that prisoners at BCDC are permitted to possess one item of religious headgear.  Plaintiff does not rebut these asseverations.   The court therefore finds that plaintiff has failed to show a violation under the RLUIPA[5]

Medical Services

Plaintiff complains that he was not provided with unspecified medication in June of 2005. In order to state a constitutional claim for denial of medical care, plaintiff must demonstrate that defendant's acts (or failures to act) amounted to deliberate indifference to his serious medical needs.[6]

---

[5] Before the RLUIPA, courts applied the First Amendment "deference" analysis found under *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) and *Turner v. Safley*, 482 U.S. 78 (1987).  These cases held that incarceration leads to a limitation on many rights and privileges as may be warranted by valid penological considerations, *see O'Lone*, 482 U.S. at 348, and that a prisoner's right to free exercise of his religion must give way to regulations that are "reasonably related to legitimate penological interests." *Id*. at 349; *cf. Turner*, 482 U.S. at 89.  The evaluation of what was an appropriate and reasonable penological objective was left to the discretion of the administrative officers operating the prison, who were to be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment were needed to maintain institutional security.  *See O'Lone*, 482 U.S. at 349.  Were plaintiff's complaint subject to this standard, the court would find no First Amendment violation because plaintiff has failed to show that his right to religious exercise was unduly regulated and restricted.

[6] This court will evaluate plaintiff's right to adequate medical care under the Due Process Clause of the Fourteenth Amendment, given his pretrial status at BCDC in 2005. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).  This Circuit has routinely applied the deliberate indifference standard to pretrial detainees, affirming that their due process rights are at least coextensive with the Eighth Amendment rights of convicted prisoners.  *See Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999); *Martin v. Gentile*, 849 F.2d 863, 870-71 (4th Cir. 1988).  Therefore, the Eighth Amendment criteria set out by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976) shall be applied to constitutional medical claims presented by pretrial detainees. *See Grayson*, 195 F.3d at 695; *Martin*, 849 F.2d at 870-71; *see also Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001).

*See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  In essence, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.  *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851.  Reckless disregard occurs when a defendant "knows of and disregard an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994); *see also Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

      According to the records, plaintiff is HIV+ and has been diagnosed with a bipolar disorder. During his detention at BCDC, plaintiff was: placed on a high caloric diet; prescribed a regimen of anti-infective drugs and psychotropic medications;[7] provided periodic blood work-ups; evaluated for his subjective complaints of back pain, chest pain, and a lump in his chest; and given an optometry consult and eyeglasses.   In response to plaintiff's complaint that he was not receiving psychotropic medications, he was referred to and seen by the BCDC Psychology Department. Undoubtedly, plaintiff's health problems are significant.  The medical records provided by defendant, however, belie any possible claim that health care personnel were indifferent to his needs or that he experienced a serious injury as a result.

Mental Health, Social, and Employment Services

---

[7]    According to the record, plaintiff received several consults with the mental health staff.

Plaintiff claims that due to overcrowding and inadequate staffing at BCDC he was not afforded adequate care for his psychological problems. He also stated that the social worker failed to provide him services for jobs and drug addiction treatment to prepare him for his return to society.

The uncontroverted record shows that plaintiff was referred for numerous psychological consults and seen repeatedly by mental health care staff. In addition, plaintiff was seen by his BCDC social worker several times during his six-month detention. Moreover, defendant's record shows that substance abuse programming is available to BCDC prisoners. Given the consults and reviews provided to plaintiff and his failure to allege injury, the court finds no merit to these Fourteenth Amendment claims.

## Access to Law Library

Plaintiff next complains that he was denied access to the BCDC law library. He cannot, however, establish that his limited access negatively affected his ability to litigate his cases. Plaintiff has failed to show a Fourteenth Amendment violation.[8] *See Lewis v. Casey*, 518 U.S. 343, 354 (1996) (access to courts denied when circumstances adversely effect a prisoner's ability to actively proceed with litigation).

## Conditions of Confinement

Plaintiff asserts that he was locked in his cell for at least 22 hours a day, causing him to be exposed to a poorly ventilated and hot cell. As a pre-trial detainee, plaintiff's challenge to the conditions of his confinement is evaluated under the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. at 535; *Grayson v. Peed*, 195 F.3d at 695-697. The proper inquiry is whether the alleged condition of confinement constitutes "punishment." *Bell v. Wolfish*, 441 U.S. at 535-537. Here,

---

[8] According to defendant's materials, plaintiff was held at BCDC pending trial on drug charges. He was represented by counsel and was afforded several opportunities to contact his attorney.

5

plaintiff has not established that the alleged conditions of his confinement were so onerous as to be punitive in nature and/or that the conditions caused him injury. Records show that he spent most of his BCDC detention on K Section. Warden Filbert affirms that BCDC provides prisoners with out-of-cell activity, including recreation, religious services, and other programming.

To the extent that plaintiff complains that he was housed in his cell for 22 hours a day, the court finds no constitutional violation. Plaintiff does not allege that the conditions under which he was housed differed in any material way from those imposed upon other BCDC prisoners. Thus, insofar as he raises a due process challenge to such an assignment, he has failed to state a claim for the violation of any constitutionally protected right. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (constitutionally protected liberty interest may be created when state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"); *see also Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997).

For these reasons, a separate order shall be entered granting defendant's motions for summary judgment and entering judgment in favor of defendants and against plaintiff.

Date: January 31, 2006                    /s/_____
                                          J. Frederick Motz
                                          United States District Judge